**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                            )
**MAURICIO ROJAS SOTO,** *et al.*,            )
                                                            )
                              **Plaintiffs,**              )
                                                            )
            **v.**                                          )            **Civil Action No. 14-00604 (RDM)**
                                                            )
**U.S. DEPARTMENT OF STATE,**                )
                                                            )
                              **Defendant.**              )
_____ )


**<u>MEMORANDUM OPINION AND ORDER</u>**

This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq.*  Plaintiffs, a family of four citizens of Colombia, seek an order requiring that the United States Department of State produce any records that refer to Plaintiffs and, "specifically," any records relied upon by the State Department "to deny the [Plaintiffs] visas for entering the United States."  Dkt. 1 at 5.  The matter is before the Court on the parties' cross-motions for summary judgment (Dkts. 12 and 15).  For the reasons set forth below, Defendant's Motion for Summary Judgment, Dkt. 12, is **GRANTED** in part and **DENIED** in part, and the Department is ordered to supplement the record as set forth below.  Because the Court will allow the Department to supplement its affidavits describing the documents it withheld, Plaintiffs' Cross Motion for Summary Judgment (Dkt. 15) is **DENIED**.  The parties may file renewed motions for summary judgment after Defendant has had an opportunity to submit additional information pertaining to the withheld documents.

# I.  BACKGROUND

The Plaintiffs in this action—Mauricio Rojas Soto, Amalia Sierra Correal, Nathalia Rojas Sierra, and Isabella Rojas Sierra—are a family from Cali, Colombia.  Dkt. 5 ¶¶ 1, 3.  On June 8, 2012, the United States Department of State ("Department") denied the application of Mauricio Rojas Soto for a non-immigrant visa to enter the United States on the ground that the Department had reason to believe that Soto was involved in illicit drug trafficking.  *See* 8 U.S.C. § 1182(a)(2)(C)(i) ("section 1182(a)(2)(C)(i)").[1]  At the same time, the Department denied the visa applications of Amalia Sierra Correal and Isabella Rojas Sierra and revoked a student visa which had been issued to Nathalia on the ground that the spouse, son, or daughter of anyone who is inadmissible under 8 U.S.C. § 1182(a)(2)(C)(i) is also inadmissible.  *See* 8 U.S.C. § 1182(a)(2)(C)(ii) ("section 1182(a)(2)(C)(ii)").  The family now seeks the records that led the Department of State to conclude that they were inadmissible and, more generally, any other records that refer to any of them.  Dkt. 5 at 11.

The parties do not dispute the factual or procedural background of the case, except to the extent that Plaintiffs deny that Mauricio Rojas Soto, or any other member of their family, was ever involved with trafficking in controlled substances.  Dkt. 15-1 at 1.  On May 2, 2013, Plaintiffs filed the FOIA request that has led to this litigation.  Dkt. 1 at 5.  In that request, Plaintiffs sought:

> [A]ll of the records maintained by your agency, including electronic records, on the referenced requesters . . . .  Besides any other records we specifically request records which would be relied upon by your agency to deny the requesters visas for entering the United States.

---

[1]  To avoid confusion and burdening those without ready access to a copy of the Immigration and Nationality Act ("INA"), the Court will cite to the provisions of the immigration law as codified in the United States Code, and not to the distinct sections of the INA.  Thus, for example, the Court will cite to 8 U.S.C. § 1182, rather than INA § 212, and to 8 U.S.C. §§ 1201 & 1202, rather than INA §§ 221 & 222.

*Id.* The Department acknowledged the request and asked for additional details relating to the visa records and requested the date and place of birth for each of the Plaintiffs, *id.* at 8, which Plaintiffs provided, *id.* at 10.

On June 14, 2013, the State Department notified Plaintiffs that their request was assigned case control number F-2013-10146 and that the Department would "begin processing" the request. Dkt. 5 at 13. Shortly thereafter, Plaintiffs notified the Department that the names referenced in the June 14 letter were incorrect and provided a correction.[2] Dkt. 1 at 15. On August 5, 2013, Plaintiffs filed an administrative appeal in which they argued that the Department had failed to provide the records within the time required by law. Dkt. 5 at 17. The Department responded that Plaintiffs' FOIA request was not subject to administrative appeal because no decision had yet been rendered. Dkt. 12 at 5.

On December 17, 2013, the State Department notified Plaintiffs that it had located and reviewed 127 records that were responsive to Plaintiffs' FOIA request. *Id.* at 19. As the Department explained in its opening brief, the Department miscounted the documents, *see* Dkt. 12-1 at 3: the Department in fact identified 132 responsive records, *id.* Of those records, the Department released three documents in full, released fourteen documents with redactions, and withheld 115 documents. *Id.* The Department reported that all of the information it withheld (including the redactions and the 115 withheld documents) was covered by FOIA Exemption 3. Dkt. 1 at 19. Exemption 3 applies to any information that is "specifically exempted from disclosure by [a statute other than FOIA] … if that statute … (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be

---

[2] The initial FOIA request referred to Babella Rojas Sierra, rather than Isabella Rojas Sierra.

withheld." 5 U.S.C. § 552(b)(3).  The Department explained that the withheld information was subject to section 1202(f), which provides that "[t]he records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential," except, under limited circumstances, where needed by a court in a pending case or provided to a foreign government on the basis of reciprocity.  8 U.S.C. § 1202(f).

On February 26, 2014, Plaintiffs filed an administrative appeal challenging the Department's failure to produce the redacted and withheld documents.  Dkt. 5 at 23.  The Department did not timely act on the administrative appeal and informed the Plaintiffs that under the governing regulations they were "deemed to have exhausted" their administrative remedies and were thus entitled "immediately [to] seek judicial review."  *See* Dkt. 5 at 28.  Plaintiffs filed this action on April 15, 2014.  Dkt. 1.  The Defendant moved for Summary Judgment on September 16, 2014, Dkt. 12, and Plaintiffs filed a Cross Motion for Summary Judgment on October 23, 2014, Dkt. 15.

## I.  LEGAL STANDARDS

The Freedom of Information Act is premised on the notion that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  It embodies a "general philosophy of full agency disclosure."  *United States Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994).  To promote government transparency, FOIA thus requires federal agencies to produce agency records to any person who requests them in accordance with published rules, unless the information requested falls within one of nine enumerated exemptions to the rule.  5 U.S.C.§ 552(a)(3), (b).

The Act provides that when a plaintiff alleges that an agency has improperly withheld records, the reviewing court must "determine the matter *de novo*." 5 U.S.C. § 552(a)(4)(B). In making this determination, the Court must "'ascertain whether the agency has sustained its burden of demonstrating that the documents requested … are exempt from disclosure under [ ] FOIA.'" *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). FOIA cases are typically resolved on motions for summary judgment, which require that the moving party demonstrate that there are no genuine issues of material fact and he or she is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986); *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011) (noting that FOIA cases are "frequently decided" on motions for summary judgment). To meet its burden, the government must generally submit "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and an index of the information withheld, *see Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973); *Summers*, 140 F.3d at 1080 (explaining that to carry its burden, agency that declines to produce a requested document "must submit a *Vaughn* index to explain why it has withheld information.").

## II.  DISCUSSION

Plaintiffs contend that the Department's response to their FOIA request was inadequate for several reasons. First, Plaintiffs argue that the Department has not demonstrated that it adequately searched for documents responsive to the query. Second, they argue that the Department improperly invoked FOIA Exemption 3 in declining to produce records relating to the government's conclusion that Mauricio Rojas Soto was involved in drug trafficking and records relating to the revocation of Nathalia Rojas Sierra's student visa. Third, Plaintiffs

contend that the entry of Mr. Soto's visa denial letter into the record of this case constituted a

"public disclosure" of the records Plaintiffs seek, and that, as a result, the Department has waived

any otherwise applicable FOIA exemptions.  Finally, they maintain that the Department has

failed to demonstrate that it fully complied with its duty to segregate portions of documents

exempt under FOIA from the portions subject to release.  The Court will address each issue in

turn.

## A.       The Adequacy of the Department's Search for Records

Plaintiffs first contend that the State Department failed to conduct an adequate search for

responsive records.  In general, in responding to a FOIA request, an agency must conduct a

search that is "reasonably calculated to uncover all relevant documents."  *Weisberg v. Dep't of

Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  To establish that a search was adequate, the

agency is required to "show that it made a good faith effort to conduct a search for the requested

records, using methods which can be reasonably expected to produce the information requested."

*Negley v. FBI*, 658 F. Supp. 2d 50, 56 (D.D.C. 2009) (quoting *Oglesby v. U.S. Dept. of Army*,

920 F.2d 57, 68 (D.C. Cir. 1990)).  The agency, however, is not required to demonstrate that

each and every responsive document was actually located or that no other relevant documents

could possibly exist.  *Perez-Rodriguez v. U.S. Dep't of Justice*, 888 F. Supp. 2d 175, 182 (D.D.C.

2012) (citing *Weisberg*, 705 F.2d at 1351).  Nor must an agency search every record system

under its control, *see Cunningham v. U.S. Dep't of Justice*, 961 F. Supp. 2d 226, 236 (D.D.C.

2013) (citing *Ogelsby*, 920 F.2d at 68), or release records or documents that are not under its

possession or control, *see Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1, 13 (D.D.C. 2011);

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 138 (1980) ("possession

or control is a prerequisite to FOIA disclosure duties").

To make the requisite showing, the agency must submit "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. This allows "a FOIA requester an opportunity to challenge the adequacy of the search." *Id.* The affidavit must be submitted by an agency official with personal knowledge of the procedures used in handling FOIA requests and familiarity with the documents in question. *See Barnard v. Dep't of Homeland Security*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (quoting *Madison Mech., Inc. v. Nat'l Aeronautics and Space Admin.*, No. 99-2854, 2003 WL 1477014, *6 (D.D.C. Mar. 20, 2003)). The declarant is not required, however, to have personally participated in the search for records. *Barnard*, 531 F. Supp. 2d at 138.

Here, the State Department has submitted the Declaration of John Hackett ("Hackett Declaration") (Dkt. 12-2). Hackett is the Acting Director of the Office of Information Programs and Services ("IPS") for the Department, and attests that he is "the Department official immediately responsible for responding to requests for records under" FOIA. Dkt. 12-2 ¶ 1. He declares that he has knowledge of the facts in his declaration based on his "personal review of the records in the case file" and information provided to him in the course of his official duties. *Id.* He further declares that, upon receiving Plaintiffs' FOIA request, the Department evaluated the request to determine which "offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested," *id.* ¶ 20, and that "the Department conducted a search of all components reasonably likely to contain records responsive to Plaintiffs' request," *id.* ¶ 49. In particular, the Department determined that it was "reasonably likely" that responsive documents might be found in the Central Foreign Policy Records, the Office of Visa Services, and the U.S. Embassy in Bogota, Colombia. *Id.* ¶ 22. The

Hackett Declaration then provides a detailed explanation of the records maintained in each of those locations and how the Department searched those records, including the databases searched and search terms used.  *See id.* ¶¶ 23-28.

The Hackett Declaration explains that trained analysts conducted full-text searches for records containing any of the Plaintiffs' names in the Central Foreign Policy Records ("Central File"), which is the Department's "centralized record system."  *Id.* ¶ 23.  That search returned no results.  *Id.* ¶ 25.  Analysts also conducted a full-text search of the Plaintiff's names in the Consular Consolidated Database ("CCD"), which is the database maintained by the Department's Office of Visa Services, and searched for paper records maintained by the Office of Visa Services.  *Id.*  ¶¶ 27, 28, 30.  Those searches returned 132 responsive records.  *Id.* ¶ 28. Finally, the staff of the Consular Section at the United States' Embassy in Bogota searched their electronic and paper files for all records related to Plaintiffs.  *Id.* ¶ 30.  The staff located no responsive records, but also noted that pursuant to State Department policy, any relevant records would have been sent to a component of the Office of Visa Services and would have been scanned into the CCD; accordingly, any documents generated by the U.S. Embassy in Bogata would have been included in the search of the records maintained by the Office of Visa Services. *Id.* ¶ 30.

Plaintiffs nonetheless argue that the Department's search was inadequate because "none of the described systems of records and/or search methods were designed to locate and identify the requested records."  Dkt. 19 at 4.  Most clearly, Plaintiffs contend that the Hackett Declaration is deficient because the Department was aware "that the primary reason for the plaintiffs' FOIA request was to ascertain what records the consular officer was relying upon to reach the conclusion that Mauricio Rojas Soto had" violated the drug law, *id.* at 4, yet the

declaration fails to explain whether and how "records of Controlled Substance Act violations are entered into any" of the Department's systems of records, Dkt. 19 at 3. Although less clear, Plaintiffs also seem to argue that had the Department used the search term "Mauricio Rojas Soto" in conjunction with the term "212(a)(2)(C)(1)"—rather than simply using the Plaintiffs' names—records should have surfaced relating to the Department's conclusion "'that he had engaged in or aided and abetted the illicit traffic of controlled substances.'" Dkt. 15-1 at 5.

These arguments are unpersuasive. Plaintiffs requested the Department's documents "on the referenced requesters"—that is, Plaintiffs—and "specifically request[ed] records which would be relied upon by [the Department]" to deny visa applications for the Plaintiffs. Dkt. 5 at 5. The Hackett Declaration explains that the Department identified the systems of records "reasonably likely" to contain the requested material and thoroughly searched both electronic and paper records for documents related to Plaintiffs. Dkt. 12-2 ¶ 22. Plaintiffs have neither identified any other locations or databases that the Defendant should have searched nor provided any basis to question the reasonableness of the Department's identification of potentially relevant records systems. *See* Dkt. 19 at 3-4. To the extent Plaintiffs suggest that the Department should have used conjunctive searches rather than simply searching for documents containing the Plaintiffs' names, such a search would have revealed *fewer* records than those the Defendant actually produced. Although Plaintiffs contend that a consular official "must have relied on records provided by another United States agency" to conclude that Mauricio Rojas Soto violated the Controlled Substance Act and seek an explanation of "what system of records would the consular officer have searched" to conclude that Mr. Soto had violated the Controlled Substance Act, Dkt. 19 at 3, FOIA merely requires an agency to describe what it did to search for records in response to a FOIA request—not to describe how it originally located records relied

upon in making an administrative decision.  The Hackett declaration describes what the Department did to locate potentially responsive records in its files.  Moreover, to the extent the Plaintiffs seek documents maintained in the files of other agencies, an agency does not have a duty to release records or documents that are not under *its* control or possession.  *Lewis v. U.S. Dept. of Justice*, 867 F. Supp. 2d 1, 13 (D.D.C. 2011).

Plaintiffs' dissatisfaction with the Department's search, moreover, seems to turn on the proposition that the Department must have some records that relate to why it believed that Mauricio Rojas Soto was involved in drug trafficking.  But this is not a case where the agency's search has come up empty.  The Department located over a hundred responsive documents.  Although the vast majority of those documents were not produced—or were produced in redacted form—the question whether an agency has properly withheld documents pursuant to a FOIA exemption is distinct from the question whether the agency's search was adequate.

Plaintiffs also contend that the search described in the Hackett Declaration does not contain "the information set forth in" the declaration in *Darnbrough v. U.S. Dep't of State*, 924 F. Supp. 2d 213 (D.D.C. 2013), another case in which a plaintiff sought records in the custody of the Department of State.  Dkt. 15-1 at 4-5.  In that case, however, the Department's affidavit described a search that was narrower than the search that was undertaken in this case; in *Darnbrough*, the Department submitted an affidavit describing one database (the CLASS database), which—as the Hackett Declaration explains—is included within the broader CCD database that the Department searched in response to Plaintiffs' request here.  See Dkt. 18 at 3-4. In other words, the Agency's search of the CCD database—which resulted in no results—would have returned any responsive documents contained in the CLASS database.

Against that background, it is not surprising that the Hackett Declaration includes less detail regarding the CLASS database than the Department provided in the *Darnbrough* case. Here, the Department did provide substantial detail regarding the records systems that it searched. The Hackett Declaration explains, for example, that the CCD database contains "[m]ost visa-related records," and that it is a consolidated system "that holds all of the current and archived data entered by consular officers and U.S. embassies and consulates around the world." Dkt. 12-2 ¶ 27. Of particular relevance, these records include documents pertaining to "nonimmigrant visa[s]" and "the visa revocation system," along with the CLASS information discussed in the *Darnbrough* case. *Id.* The declaration also describes the Central Foreign Policy Records, or Central File, which is "the Department's centralized records system and contains over 30 million records of a substantive nature." *Id.* ¶ 23. According to the Hackett Declaration, the Central File contains, among other records, telegrams and correspondence between the Department and foreign governments and other federal agencies. *Id.* Finally, the declaration describes the overlap between records maintained at the Kentucky Consular Center and the CCD, and it explains what was done to search for paper and electronic records at the U.S. Embassy in Bogota, Columbia. *Id.* ¶ 30.

Based on this undisputed record, the Court finds that both the Department's search and its description of the relevant record systems were sufficient. The Department, accordingly, has met its burden to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.

**B.      Applicability of FOIA Exemption 3**

The only FOIA exemption that the Department relied upon in redacting or declining to

produce the responsive documents was Exemption 3.  That exemption provides in relevant part

that agencies need not disclose records that are "specifically exempted from disclosure by statute

. . . if that statute (i) requires that the matters be withheld from the public in a manner as to leave

no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to

particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  The State Department

claims that the documents that it redacted or declined to produce are exempt from disclosure

because they are covered by "a statute," 8 U.S.C. § 1202(f), which provides that "records of the

Department of State and of diplomatic and consular offices of the United States pertaining to the

issuance or refusal of visas or permits to enter the United States shall be considered

confidential."  8 U.S.C. § 1202(f) ("section 1202(f)").  The Court of Appeals has squarely held

that section 1202(f) is a statute covered by Exemption 3 and that, accordingly, records subject to

8 U.S.C. § 1202(f) are exempt from disclosure under FOIA.  *Medina-Hincapie v. Dep't of State*,

700 F.2d 737, 744 (D.C. Cir. 1983); *see also Darnbrough*, 924 F. Supp. 2d at 217.  Section

1202(f) "has been interpreted," moreover, "to include not only information supplied by the visa

applicant, but also any 'information revealing the thought-processes of those who rule on the

application.'"  *Id.*

"An agency that has withheld responsive documents pursuant to a FOIA exemption can

carry its burden to prove the applicability of the claimed exemption by affidavit" or declaration.

*Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  In order to prevail, the agency

must describe "the documents and the justifications for nondisclosure with reasonably specific

detail, demonstrate that the information withheld logically falls within the claimed exemption,

and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). The agency must show that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from disclosure under FOIA. *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted). Although the Court reviews the Agency's justifications for withholding responsive records *de novo*, "[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2006)). Thus, as Plaintiffs correctly observe, an agency that seeks to invoke a FOIA exemption "'must append a declaration to its motion for summary judgment that provides detailed and specific information demonstrating that material withheld is logically within the domain of the exemption claimed.'" Dkt. 15-1 at 4-5 (quoting *Cottons v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999) (internal quotations omitted)). It is unclear, however, what conclusions Plaintiffs would have the Court draw from this premise.

Although it is not entirely clear, Plaintiffs first seem to argue that the Department's failure to provide "evidence that Mauricio [Rojas Soto] had engaged in or aided and abetted the illicit traffic of controlled substances" somehow precludes application of Exemption 3. Dkt. 15-1 at 5. That contention, however, misunderstands Exemption 3 and section 1202(f), and, indeed, would stand both provisions on their heads. The government need not produce the very information protected from disclosure in order to demonstrate that the relevant exemption applies. Rather, under Exemption 3 and section 1202(f), the Department need only demonstrate with the requisite detail that the undisclosed information "pertain[s] to the issuance or refusal of visas or permits to enter the United States," 8 U.S.C. § 1202(f). For the reasons discussed below,

13

the Court concludes that the Department's submission requires further clarification.  But that has

nothing to do with the Department's failure to proffer evidence relating to illicit drug trafficking.

Plaintiffs also contend that any protection that FOIA and section 1202(f) might otherwise

afford the requested materials does not apply because the records have already, according to

Plaintiffs, entered the public domain. Their theory appears to be that because the Department's

summary judgment submission disclosed a copy of the letter denying Mauricio Rojas Soto's visa

application and copies of the revoked or cancelled visas of his family members (Dkt. 13-1 at 22,

36-39), the Department has waived any FOIA exemptions applicable to these actions.  *See Wolf*,

473 F.3d at 378.

This argument also bears limited weight.  It is true that, under the "public domain

doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak

once disclosed and preserved in a permanent public record."  *Cottone*, 193 F.3d at 554.  Because

the purposes of FOIA are not served where the relevant information is already "truly public,"

application of the FOIA exemption "cannot fulfill its purposes."  *Niagara Mohawk Power Corp.*

*v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999).  The public domain doctrine,

however, comes with significant limitations.  As an initial matter, to avoid putting the

government to the "daunting task of proving a negative," the party seeking to invoke the public

domain doctrine "bears the initial burden of production."  *Cottone*, 193 F.3d at 554.  To carry

that burden, the plaintiff must "point[ ] to specific information in the public domain that appears

to duplicate that being withheld."  *Afshar v. Department of State*, 702 F.2d 11125, 1130 (D.C.

Cir. 1983).  The fact that "similar information" is already public "does not suffice"; the "*specific*

information sought . . . must already be in the public domain by official disclosure."  *Wolf*, 473

F.3d at 378 (emphasis in original).  In this context, where Plaintiffs rely on material disclosed in

a judicial proceeding, that means that they must show that the government has previously made the "exact" documents or information at issue part of "a permanent public record." *Cottone*, 193 F.3d at 554 (quoting *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1280-81 (D.C. Cir. 1993)).

To the extent the Department withheld the "exact" documents that it has now submitted as part of the "permanent public record" in this proceeding, Plaintiffs are correct that the Department has waived any exemption through its disclosure. Plaintiffs, however, previously received some or all of those materials—such as the letter addressed to Maurucio Rojas Soto— and, in any event, have now certainly received the materials that the Defendants filed during this litigation. Accordingly, with respect to the records actually entered into the record in this case— even if they were previously withheld—no further relief is required.

That, of course, is not what the present dispute is about. With respect to the records that Plaintiffs seek to discover through this action, however, they have failed to point to any public records that duplicate those records. The fact that the Department referred to the existence of certain records is plainly not enough to invoke the public domain doctrine. Indeed, if it were, virtually every *Vaughn* index would effectively resolve the case against the government. Thus, with the exception of the actual document submitted along with the Department's motion for summary judgment, Plaintiffs have failed to carry their burden of demonstrating that the records are already public. If the Department did withhold any of the records attached to its motion, however, it should—although perhaps unnecessary—produce those materials to Plaintiffs pursuant to their FOIA request, and it should modify its *Vaughn* index to reflect this fact.

Plaintiffs' contention that the Department wrongfully withheld information relating to the revocation of Nathalia Rojas Sierra's student visa raises a more substantial issue. Plaintiffs

15

argue that section 1202(f) protects only records "pertaining to the issuance or refusal of visas or permits to enter the United States," *see* Dkt. 15-1 at 11 (arguing that "revoked visas are not subject to 8 U.S.C. § 1202(f)"), and in their view, revocation of a visa does not "pertain" to these distinct immigration actions and documents pertaining to revocation thus must be disclosed under FOIA, *id.* at 11-12.   The Department, in turn, responds with two arguments.   It argues, first, that section 1202(f) is sufficiently capacious to reach revocation proceedings, Dkt. 17 at 11-12, and, second, that because the revocation of Nathalia Rojas Sierra's student visa was tied to the denial of Mauricio Rojas Soto's visa application, the revocation of her visa necessarily overlaps with the Department's "issuance or refusal of" his visa, *id.* at 12.

The question whether section 1202(f) applies to revocation proceedings is not well-settled.   Within this district, two decisions have touched on the issue.   In one case, as in this case, the plaintiff sought "the reasons and evidence related to the refusal of his . . .Visa application, as well as the reasons and evidence relating to the revocation of a U.S. Visa." *Beltranena*, 821 F. Supp. 2d at 177.   There, the court held that the State Department properly invoked Exemption 3 and section 1202(f).   In contrast, in the principal case relied upon by Plaintiffs, the court considered whether a record included in a database "used to determine visa eligibility" could be withheld "simply by virtue of where it is stored," *Darnbrough*, 924 F. Supp. 2d at 217, "regardless of whether [that record] relates to the issuance or refusal of visa applications," *id.* at 218.   In the course of concluding that the record was not subject to disclosure, the court observed that section 1202(f) "does not concern other aspects of visas or immigration, such as visa revocations." *Id.* at 218.

The applicability of section 1202(f) to visa revocations was explored in greater detail in *El Badrawi v. Department of Homeland Security*, 583 F. Supp. 2d 285 (D. Conn. 2008), which

addressed, among other things, whether the plaintiff was entitled to obtain records from the State

Department relating to the revocation of his visa.  Relying on the "plain language of the statute

and the interpretative doctrine of *expressio unius*," the court held that the section 1202(f) protects

only materials pertaining to the "issuance" and "refusal" of visas, and that the "revocation" of a

visa is neither "issuance" nor "refusal."  *Id.* at 311.  The *El Badrawi* court also relied on

subsequent legislative history, where Congress amended the Immigration and Nationality Act

("INA"), including section 1202(f), while continuing to treat visa revocation as distinct from

"issuance" and "refusal."  *Id.* at 311-12.  To bolster this conclusion, the court noted, for example,

that visa issuance and revocation are addressed in separate sections of the INA.  *Id.* at 312.

In reviewing these precedents and the text of the INA, the Court is not yet convinced that

visa revocations fall beyond the reach of section 1202(f).  Indeed, 8 U.S.C. § 1201, which

authorizes consular officers in their discretion to revoke visas, is entitled "Issuance of visas," and

that section addresses the authority of consular officers relating to issuing visas, "nonissuance,"

and revocation.  *See* 8 U.S.C. §§ 1201(g) ("Nonissuance of visas or other documents"), (i)

("Revocation of visas or documents").  Section 1202, in turn, is entitled "Application for visas,"

and establishes the procedures that effectuate the authorities granted in section 1201.  The

provisions, accordingly, appear to work together in a manner that might well contemplate the

application of the confidentiality provisions of section 1202(f) to the entire grouping of

proceedings.

Nor is the Court convinced at this time that the plain language of section 1202(f)

forecloses the Department's contention that records pertaining to revocation of a visa are covered

by the confidentiality provision.  The "revocation" of a visa, for example, might reasonably be

understood to constitute a "refusal"—that is, the United States has decided to refuse the

noncitizen the further right to enter the Country.  Similarly, the "revocation" of a visa might

reasonable be understood to "pertain" to its "issuance"—that is, the Department has decided to

revisit its decision to issue the visa and determined that its decision was either mistaken or

should be reconsidered.

For present purposes, however, the Court concludes that it should take the same approach

the district court initially took in *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 184 n.5, 185, and

"defer consideration of whether Exemption 3 [and section 1202(f)] appl[y]."  Here, deferral is

appropriate because the Department's *Vaughn* index requires clarification, and it is uncertain

whether, and in what manner, the revocation issue is actually presented.  As explained below,

this uncertainty is highlighted by the Department's second argument for withholding any records

relating to the revocation of Nathalia Rojas Sierra's student visa.

That argument posits that the revocation of Nathalia Rojas Sierra's student visa was

"inextricably intertwined with" the denial of her father's visa.  Dkt. 17 at 11.  Under 8 U.S.C. §

1182(a)(2)(C), an alien who is "the spouse, son, or daughter of an alien inadmissible" based on

the government's belief that he or she is or has been engaged in illicit drug trafficking is also

inadmissible.  The Department thus argues that the decision to revoke Nathalia Rojas Sierra's

visa necessarily followed from the decision to deny Mauricio Rojas Soto's application and that

"disclosing confidential information related to the revocation of the daughter's visa would

necessarily disclose confidential information regarding denial of the father's visa."  Dkt. 17 at

11.

The problem with the Department's position is that the record is inadequate to support

that defense.  The *Vaughn* index submitted along with the Department's motion includes no

mention of records relating to the revocation of Nathalia Rojas Sierra's student visa, but rather

describes only documents related to her "visa application."  *See, e.g.*, Dkt. 12-2 at ¶ 47.  In contrast, in its briefs, the Department acknowledges that "[a]lthough most of the documents withheld are related to the refusal of the visa applications of all four plaintiffs, there are . . . some documents that related to the revocation of Nathalia Rojas Sierra's . . . student visa," Dkt. 12 at 14 n.7.  Unless and until the Department clarifies what documents relate to the revocation of Nathalia Rojas Sierra's student visa and the basis or bases for withholding or redacting those records, neither the Court nor the Plaintiffs can assess the merits of this argument.  Accordingly, the Department needs to be more specific about what it is withholding and on what basis.  Its supporting declaration and *Vaughn* index, for example, should distinguish between the different terms and concepts that form possible bases for withholding.  Only after the Department provides that information can the Court address whether the Department's refusal of issuance and revocation decisions were "inextricably intertwined" in this case.  The Court will then determine whether section 1202(f) applies to documents that *solely* relate to the revocation of a visa only if it is necessary to resolve that question after the record has been so supplemented.

## C.  The Department's Segregability Obligations

Plaintiffs also argue that the Department failed fully to comply with its segregability obligations under FOIA.  Because "the focus of the FOIA is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  *Mead Data Central, Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Thus, unless the non-exempt information is "inextricably intertwined with the exempt" information, the agency must produce the non-exempt material.  *Id.*  As framed in the statute, "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).

The agency, moreover, bears "the burden of justifying nondisclosure." *Mead Data*, 566 F.2d at 260.  In doing so, it is not required "to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Id.* at 261 n.55.  And it need not "provide such a detailed justification that [it] would . . . compromise the [confidential] nature of potentially exempt information." *Id.* at 261.  But the agency must "show with reasonable specificity why the documents cannot be further segregated," *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996), and provide a "'detailed justification' for its non-segregability," *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead*, 566 F.2d at 261).

In *Mead*, the Court of Appeals explained that, in addition to providing "its reasons," an agency should "describe what proportion of the information in the document is non-exempt and how that material is dispersed throughout the document." *Mead*, 566 F.2d at 261.  Absent such a detailed explanation, and absent *in camera* review—which is not favored—the Circuit explained that a district court cannot make "a reasoned judgment as to whether the material is actually exempt under the FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979); *see also Schoenman v. FBI*, 604 F. Supp. 2d 174, 198 (D.D.C. 2009) (finding that the defendant did not provide sufficient information to meet its segregability obligations because the *Vaughn* index failed to include any description of withheld documents).

However, as a recent decision from this district has explained, "the Circuit has more recently held that '[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," and that presumption can be overcome only with some "quantum of evidence." *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 310 (D.D.C. 2013)

(quoting *Sussmann v. U.S. Marshall's Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).  Some of

the Court of Appeals' rulings, moreover, suggest that the *Mead* standard has been somewhat

"relaxed." *Muttitt*, 926 F. Supp. 2d at 310.  For instance, in *Johnson*, the Court of Appeals upheld

the district court's conclusion that a defendant agency had met its burden on the issue of

segregability by providing a "comprehensive *Vaughn* index, describing each document withheld,

as well as the exemption under which it was withheld," along with an affidavit in which an

agency official "explained that she personally conducted a line-by-line review of each document

withheld in full and determined that 'no documents contained releasable information which

could be reasonably segregated from the nonreleaseable portions.'"  310 F.3d at 776; *see also*

*Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008) (citing *Johnson* for the proposition

that segregability analysis was adequate where the district court relied on "the description of the

document set forth in the *Vaughn* index and the agency's declaration that it released all

segregable materials.").

> Here, Plaintiffs assert that the Department has failed to fulfill its burden because it "has

not provided reasons behind [its] conclusions."  Dkt. 19 at 8.  The Department responds by

arguing that the *Vaughn* index and the rest of the Hackett Declaration "explain that [the

Department] conducted a line-by-line segregability analysis with respect to each responsive

document from all of the record systems it searched."  Dkt. 18 at 9.  The Department contends

that the information in each responsive document "pertains exclusively to the issuance or refusal

of a visa to enter the United States and contains no other reasonably segregable, non-exempt

information that can be released."  Dkt. 18 at 9.  It also contends that "all non-exempt portions of

the responsive records are inextricably intertwined with Plaintiffs' request for the basis of the

Department's denial of their NIV application," and that, accordingly, "the Department fully complied with its segregability obligations in withholding this information."  Dkt. 18 at 9.

Against this backdrop, the Court concludes that the Department has met its burden to demonstrate that it has produced all reasonably exempt materials, with the possible exception of any documents (or segregable portions thereof) pertaining to the revocation of Nathalia Sierra's student visa.  The *Vaughn* index describes each withheld document and makes clear that each directly pertains to the Plaintiffs' visa applications.  The withheld documents include, for instance, three- to six-page printouts of "the results of name checks run through the Consular Lookout and Support System (CLASS) in the course of processing visa applications" for each Plaintiff, Dkt. 12-2 ¶ 36; two- to three-page printouts of documents entitled "NIV [nonimmigrant visa] Applicant Detail" for each plaintiff, *id.* ¶ 37; printouts entitled "NIV Applicant Case Lookup Detail" pertaining to each plaintiff, *id.* ¶ 38; and printouts "tracking changes made to data fields regarding [Plaintiffs'] visa applications, *id.* ¶ 44.  The Hackett Declaration, moreover, specifies that most of the documents withheld in full were actually used or created in the course of processing or adjudicating the Plaintiffs' visa applications.  *See, e.g.*, *id.* ¶ 36 (describing the "results of name check run…in the course of processing visa application" for Plaintiffs); ¶ 39 (printouts describing "the details of name check results conducted in the course of processing [Plaintiffs'] visas"); ¶¶ 40-43 (results of fingerprint checks "conducted in the course of processing visa applications"); ¶ 45 (records of arrival and departure from the United States "used in the course of adjudicating" Plaintiffs' visa applications).   This is thus not a case where the Agency has withheld large reports or documents containing merely passing references to particular visa applications; rather, Plaintiffs' visa applications were the primary subject of, or reason for the existence of, each document withheld.  Accordingly, in the circumstances

presented by this case, the Department's detailed affidavit describing the documents coupled

with its assertion that a "line-by-line" segregability analysis was conducted for every withheld

document, *see, e.g.*, Dkt. 12-2 ¶ 50, suffice for the Court to conclude that there is no dispute of

material fact as to the Department's compliance with its segregability obligations, *see Loving*,

550 F.3d at 41, except potentially for those portions of documents pertaining solely to the

revocation of Nathalia Rojas Sierra's student visa.

**D.      Plaintiffs' Request That The Court Obtain The Withheld Records**

Finally, in reply, Plaintiffs cite (at Dkt. 19 at 9) to a Foreign Affairs Manual Provision,

which appears to quote 8 U.S.C. § 1202(f)(1).  That provision provides that the Secretary of State

may exercise his or her discretion to make records available to a court when those records are

needed "in the interest of the ends of justice in a case pending before the court."  Dkt. 19 at 9.

Here, the Plaintiffs request that the Court "notify the Secretary of State to provide the withheld

records in the interests of the ends of justice."  *Id*.  The Court declines that request.  Plaintiff has

not demonstrated that *in camera* review of the records is necessary to resolve the pending matter,

and, indeed, has not requested that the Court conduct an *in camera* review.  *See Juarez v. Dep't

of Justice*, 518 F.3d 54, 59-60 (D.C. Cir. 2008) ("It is true that FOIA provides district courts the

option to conduct *in camera* review, but it by no means compels the exercise of that option.").

And, to the extent Plaintiffs believe that section 1202(f)(1) authorizes a court to request

documents from the Secretary merely for the purpose of turning those documents over to an

unsuccessful FOIA applicant, that is not a reasonable construction of the statute.

### III.  CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment, Dkt. 12, is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** with respect to the adequacy of Defendant's search, the Defendant's compliance with its segregability obligations, and the applicability of FOIA exemption 3, except with respect to the question of whether the Agency properly withheld documents or portions of documents pertaining to the revocation of Nathalia Rojas Sierra's visa and providing further detail regarding its decision to withhold records relating to the revocation of Nathalia Rojas Sierra's visa.  As to that question, the motion is **DENIED**.  Plaintiff's Motion for Summary Judgment, Dkt. 15, is **DENIED**.  It is further **ORDERED** that on or before August 28, 2015, the Department shall file an additional affidavit providing further detail as to whether each document pertains to the issuance, denial, or revocation of a visa.  The parties may file renewed motions for summary judgment after Defendant has had an opportunity to file that additional information.

It is **SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
 RANDOLPH D. MOSS
United States District Judge


Date:  August 6, 2015