UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAURICIO ROJAS SOTO, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE, <br><br> *Defendant*. | Civil Action No. 14-604 (RDM) |

**MEMORANDUM OPINION**

This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by a family of four Colombian citizens attempting to obtain information about the records relied upon by the State Department to deny their visa applications.  In August 2015, the Court issued an opinion granting the State Department's motion for summary judgment in principal part, concluding that the Department had conducted an adequate search for responsive records and had appropriately withheld portions of those records under FOIA Exemption 3.  *See Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355 (D.D.C. 2015).  The Court reserved judgment, however, as to one question of law: whether 8 U.S.C. § 1202(f), which permits the Department to withhold documents "pertaining to the issuance or refusal of visas," also extends to records pertaining to the *revocation* of visas.[1]  *See Soto*, 118 F. Supp. 3d at 367–69.

At the Court's direction, the Department has filed a supplemental declaration purporting to provide additional details about the documents it withheld under Exemption 3.  Dkt. 22.  It has

---

[1] To avoid confusion, the Court will cite to the provisions of immigration law as codified in the U.S. Code, not as separately codified in the Immigration and Nationality Act—for example, to 8 U.S.C. § 1182 rather than INA § 212.

also filed a renewed motion for summary judgment with respect to those records. Dkt. 24. The plaintiffs have filed a motion for reconsideration of the Court's original opinion, Dkt. 28, and a renewed motion for summary judgment with respect to the records that the Department claims it relied upon in revoking one plaintiff's student visa, Dkt. 30. For the following reasons, the Court will grant the Department's motion, deny the plaintiffs' motion, and deny the plaintiffs' motion for reconsideration.

## I. BACKGROUND

The facts and procedural history of this action are set out in the Court's prior opinion, *see Soto*, 118 F. Supp. 3d at 359–60, and the Court will recount them only briefly here.

The plaintiffs—Mauricio Rojas Soto, Amalia Sierra Correal, Nathalia Rojas Sierra, and Isabella Rojas Sierra—are four Colombian citizens. *Id.* at 359. In or around 2012, Soto applied for a non-immigrant visa to enter the United States. *Id.* On June 8, 2012, Soto's application was denied, apparently on the ground that the United States had reason to believe that Soto had been involved in drug trafficking. *Id.* At the same time, the United States denied visas to Correal and Isabella Rojas Sierra, and revoked a student visa previously issued to Nathalia Rojas Sierra, apparently on the ground that the spouse, son, or daughter of anyone involved in drug trafficking is also inadmissible. 8 U.S.C. § 1182(a)(2)(C)(ii). The plaintiffs deny that Soto, or any other member of the family, has ever been involved in trafficking in controlled substances.

The plaintiffs filed FOIA requests with the Department, seeking the records that led the Department to conclude that they were inadmissible. *Soto*, 118 F. Supp. 3d at 359. After some administrative back-and-forth, the Department identified 132 records responsive to their request, of which it produced 3 in full, produced 14 in part, and withheld 115. *Id.* at 360. It withheld the 115 records (and portions of the 14 records) on the ground that the withheld material was exempt

from disclosure under FOIA Exemption 3, which shields material that is "specifically exempted from disclosure by statute," provided that the statute meets certain criteria. *Id.*; *see* 5 U.S.C. § 552(b)(3). The Department argued that the withheld material was shielded by 8 U.S.C. § 1202, which provides that State Department records "pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential," except under circumstances not present in this case. 8 U.S.C. § 1202(f).

The Court granted the Department's motion for summary judgment with respect to most issues in the case. *Soto*, 118 F. Supp. 3d at 361–72. First, the Court held that the Department had conducted an adequate search for records responsive to the plaintiffs' FOIA request. *Id.* at 364–65. Second, it held that the Department had lawfully withheld records that related to the denial of visas for Soto, Correal, and Isabella Rojas Sierra. *Id.* at 367. Third, it held that the Department had complied with its segregability obligations, at least with respect to all records relating to the denial of those three visas. *Id.* at 371. The Court reserved judgment, however, with respect to one issue in the case: whether 8 U.S.C. § 1202(f) applies to documents relating only to the *revocation* of visas, as opposed to the "issuance or refusal of visas." *Id.* at 367–69; *see* 8 U.S.C. § 1202(f). As the Court explained, the *Vaughn* index submitted by the Department did not distinguish between the records relied upon to deny visas to Soto, Correal, and Isabella Rojas Sierra and the records relied upon to revoke Nathalia Rojas Sierra's student visa. *Soto*, 118 F. Supp. 3d at 368. It thus left open the possibility that Nathalia Rojas Sierra's student visa was revoked only on the basis of those records used to deny Soto's visa, in which case the Court would not need to resolve whether 8 U.S.C. § 1202(f) extends to visa revocation. *Id.* The Court therefore denied the Department's motion for summary judgment with respect to the records

related to the visa revocation, *id.* at 371, and directed the Department to produce a supplemental declaration on that question.

The Department has filed a supplemental declaration pursuant to the Court's order. Dkt. 22. Subsequent to the filing of that declaration, the parties have filed renewed cross-motions for summary judgment. Dkts. 24, 30. The plaintiffs have also filed a motion for reconsideration of the Court's original opinion. Dkt. 28. The motions are now fully briefed.

## II.  DISCUSSION

**A.      Renewed Motions for Summary Judgment**

The primary question remaining in the case is whether the Department lawfully withheld records relating to the revocation of Nathalia Rojas Sierra's student visa under FOIA Exemption 3. *Soto*, 118 F. Supp. 3d at 367–69. As the Court has explained, it initially declined to resolve this question because it was not clear, on the record previously before the Court, whether the Department had withheld any "documents that *solely* relate[d] to the revocation of a visa," or whether instead it had withheld only records that related *both* to the denial of Soto's visa and the revocation of Nathalia Rojas Sierra's student visa. *Id.* at 369. The Department has now filed a supplemental declaration in response to the Court's opinion. Dkt. 22 (Gorsky Decl.). Instead of providing the additional detail that the Court requested, however, *see Soto*, 118 F. Supp. 3d at 369, the declaration merely sets out the Department's legal position, explaining that documents relating to visa revocation are exempt as a general matter because, when it revokes a visa, "the Department relies on all of the information available regarding the applicant's eligibility for a visa . . . as would be used for an initial issuance." Dkt. 22 at 2 (Gorsky Decl. ¶ 5). That may be so, but it leaves the Court in the same position it was in nine months ago—with a record that is "inadequate to support" the Department's argument that

>the decision to revoke Nathalia Rojas Sierra's visa necessarily followed from the decision to deny Mauricio Rojas Soto's application and that "disclosing confidential information related to the revocation of the daughter's visa would necessarily disclose confidential information regarding the denial of the father's visa."

*Soto*, 118 F. Supp. 3d at 368 (quoting Dkt. 17 at 11). Because the Court cannot be certain whether the Department in fact withheld only documents that it relied upon in denying Soto's visa application or whether, instead, it withheld at least *some* documents that were used *only* to revoke Nathalia Rojas Sierra's visa (and would not "disclose confidential information regarding the denial of [Soto's] visa," *id.*), the Court will assume the latter. That is, the Court will assume that at least some of those records withheld by the Department were relied upon *only* in revoking Nathalia Rojas Sierra's visa—and, operating on that assumption, will address whether § 1202(f) protects such records.

Accordingly, the Court turns to that question: whether 8 U.S.C. § 1202(f), which makes confidential those State Department records that "pertain[] to the issuance of refusal of visas or permits to enter the United States," also protects records that pertain to the *revocation* of visas. The Court concludes that it does.

As the Court noted in its prior opinion, there is no binding authority within this circuit regarding the applicability of § 1202(f) to records relating to visa revocations. What authority exists, moreover, is conflicting. One district court opinion holds that § 1202(f) shields such records. *See Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 178 (D.D.C. 2011). But a second opinion states that § 1202(f) does not shield such records, although that conclusion was not necessary to support the Court's holding in that case that § 1202(f) protects specific records and not the entire databases in which those records are found. *See Darnbrough v. U.S. Dep't of State*, 924 F. Supp. 2d 213, 218 (D.D.C. 2013). Although neither opinion engages in an

5

extensive analysis of the issue, the second opinion does stress that § 1202(f) appears in a section of the U.S. Code entitled "Application for visas," while the provision governing visa revocations appears in the preceding section of the Code. *Id.* That argument is further developed in *El Badrawi v. Department of Homeland Security*, 583 F. Supp. 2d 285, 311 (D. Conn. 2008), an out-of-circuit district court opinion, which holds that § 1202(f) does *not* shield records related to the revocation of a visa. For the following reasons, the Court disagrees with *El Badrawi*.

The centerpiece of *El Badrawi*'s reasoning on this issue is an argument from *expressio unius*, the canon that "the explicit inclusion of certain items is the implicit exclusion of others." *El Badrawi*, 583 F. Supp. 2d at 311 n.20; *see also, e.g.*, *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 696 (D.C. Cir. 2014) (applying this canon). In the words of *El Badrawi*:

> Relying solely on the plain language of the statute and the interpretive doctrine of *expressio unius*, the statute cannot be read to apply to visa revocations. That is, while both "issuance" and "refusal" of visas are explicitly mentioned, "revocation" is not. *See* 8 U.S.C. § 1202(f). Clearly, the issuance of, or the refusal to issue, a visa is not a revocation. Thus, on the plain language of the statute, records pertaining to visa revocation are not protected under the INA, and CBP improperly withheld information under Exemption 3.

*El Badrawi*, 583 F. Supp. 2d at 311 (internal footnote omitted).

In the Court's view, however, the plain text of the statute does not dictate this result. The statute provides only that State Department records "pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential." 8 U.S.C. § 1202(f). It is not difficult to see how records that document the revocation of a visa—or that were relied upon in the course of revoking a visa—could "pertain[] to the issuance or refusal of [a] visa[]." As the Court explained in its initial opinion,

> The "revocation" of a visa, for example, might reasonably be understood to constitute a "refusal"—that is, the United States has decided to refuse the noncitizen the further right to enter the [c]ountry. Similarly, the "revocation" of a visa might reasonabl[y] be understood to "pertain" to its "issuance"—that is, the

6

>Department has decided to revisit its decision to issue the visa and determined that its decision was either mistaken or should be reconsidered.

*Soto*, 118 F. Supp. 3d at 368. The language of the statute, standing alone, is sufficiently capacious to encompass this result. Indeed, although the Court previously withheld judgment on the issue, it now holds that the statutory language is best read to reach visa revocations, which "pertain" to the "issuance or refusal of visas or permits to enter the United States." *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (explaining that the ordinary meaning of the phrase "relating to" is "a broad one—'to stand in some relation; to have bearing or concern; to pertain; to bring into association with or connection with'" (quoting *Black's Law Dictionary* 1158 (5th ed. 1979))). That is, as a textual mater, a decision to revoke a visa relates to, has a bearing on, or concerns the issuance of the visa, *see id.*—it nullifies that action.

As importantly, it is difficult to understand why Congress would have intended to treat documents related to the issuance or refusal of a visa as confidential, while declining to protect similar (if not identical) documents that relate to the revocation of a visa. It is a basic canon of statutory construction that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *See Lockhart v. United States*, 136 S. Ct. 958, 963 (2016). As the Department has explained, when it adjudicates a visa revocation, it "relies on all of the information available regarding the applicant's eligibility for a visa and employs the same thought processes as would be used for an initial issuance." Dkt. 22 at 2 (Gorsky Decl. ¶ 5). The revocation of a visa also, as the Department explains, involves *either* revisiting the information relied upon in the initial issuance of the visa *or* considering new information that would usually be made available in an application for the issuance of a new visa. *See id.* at 2–3 (Gorsky Decl. ¶ 5). In either situation, the Department's decision to revoke a visa is essentially the same as its decision whether to issue a visa in the first instance.

7

Moreover, although *El Badrawi* and *Darnbrough* place significant weight on the fact that the subsection of the INA that governs the revocation of visas is distinct from the subsection that governs the application for a visa, *see El Badrawi*, 583 F. Supp. 2d at 311–12; *Darnbrough*, 924 F. Supp. 2d at 218, the Court is unconvinced that this fact supports their narrow reading of § 1202(f). Although § 1202(f) appears in a section of the INA entitled "Application for visas," 8 U.S.C. § 1202, the subsection of the INA that provides for the revocation of visas, § 1201(i), appears in a section of the Act entitled "Issuance of visas," *see id.* § 1201. Thus, if anything, these titles merely reinforce the Court's conclusion that the issuance and revocation of visas represent two sides of the same coin. Although the issuance of a visa is undoubtedly a "distinct" act from the revocation of that same visa, *see El Badrawi*, 583 F. Supp. 2d at 312, the relevant question is not one of equivalence but of pertinence.

In sum, the Court concludes that the Department acted lawfully in withholding records relating to Nathalia Rojas Sierra's visa revocation pursuant to Exemption 3. The Court will, for that reason, grant the Department's renewed motion for summary judgment, Dkt. 24, and deny the plaintiffs' motion for summary judgment, Dkt. 30.

**B.    Motion for Reconsideration**

The plaintiffs also move for reconsideration of the Court's August 6, 2015 Opinion. Dkt. 28. The plaintiffs assert two bases for reconsideration of the Court's Opinion. Neither has merit on the current record.[2]

---

[2] The parties characterize the plaintiffs' motion as arising under Federal Rule of Civil Procedure 60, which permits the Court to "relieve a party or its legal representative from a final judgment." Fed. R. Civ. P. 60(b). Because the Court's prior opinion was not a final judgment, however, the motion should have been brought under Rule 54(b), which permits the Court to revise an interlocutory order "at any time before the entry of" final judgment. *See* Fed. R. Civ. P. 54(b).

First, the plaintiffs point to letters that they received from the Drug Enforcement Agency ("DEA") in response to subsequent FOIA requests as evidence that warrants reconsideration. *See* Dkt. 28-1 at 3–6. In the wake of the Court's opinion, the plaintiffs state, they filed FOIA requests with the DEA seeking any records that that agency possessed regarding them. *Id.* at 3; *see* Dkt. 28-2 at 2 (Pls.' Recons. Mot., Ex. A). The DEA responded that, after searching for the plaintiffs' names in its databases, it could locate no responsive records. *See* Dkt. 28-5 at 2–3 (Pls.' Recons. Mot., Ex. D). The plaintiffs contend that the DEA's failure to produce responsive records constitutes "confirmation . . . that none of the plaintiffs have trafficked in . . . control[led] substances," Dkt. 28-1 at 6, and, when considered in light of the failure of multiple other governmental agencies to identify records that would substantiate the Department's finding, constitutes "sufficient grounds to set aside [the Court's opinion] as to [E]xemption 3," *id.*

The plaintiffs' arguments do not provide a sufficient basis for the Court to reconsider its opinion. Although Court retains "broad discretion to grant or deny a motion for reconsideration" under Rule 54(b), *Cobell v. Norton*, 224 F.R.D. 266, 273 (D.D.C. 2004), such a motion will generally be granted only when the movant identifies "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order," *Murray v. Amalgamated Transit Union*, 99 F. Supp. 3d 149, 153 (D.D.C. 2015) (quoting *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011)). The plaintiffs argue that the DEA's failure to identify responsive records qualifies as "new evidence," but the Court's opinion was not based on the premise that some governmental agency other than the Department maintained records regarding the plaintiffs' alleged participation in drug trafficking. And, even more to the point, the Department did not decline to provide records to the plaintiffs because none existed; indeed, it told them that it had identified over 400 pages that might be responsive to their request, Dkt.

13-1 at 47 (Def.'s MSJ, Ex. 11). The fact that a different agency failed to identify responsive documents does not undermine the Department's assertion that it located responsive documents, nor is it evident how such a suggestion would support the plaintiffs' efforts to *obtain* documents from the Department.

Second, in their reply in support of their motion for reconsideration, the plaintiffs assert an additional reason for the Court to reconsider its original opinion: it failed to address whether and how the Privacy Act applies to the Department's production of records. *See generally* Dkt. 33. Specifically, in response to the Department's observation that "[t]o the extent Plaintiffs are challenging the information the Consular Officer relied on," the Privacy Act, not FOIA, is "the proper vehicle," Dkt. 32 at 4 n.2, the plaintiffs point out that their case *was* "predicated on this Court's jurisdiction under FOIA and the Privacy Act," Dkt. 33 at 1–2. The plaintiffs further argue in their reply brief that they "are challenging the accuracy of Defendant's records" under the Privacy Act, and contend that "[t]he Consular Officer's reliance on an undisclosed record has been contradicted repeatedly by domestic and foreign agencies who have no records of . . . Soto illegal[ly] trafficking in illicit controlled substances." *Id.* at 2, 4.

The problem with this argument is that it bears little or no relationship to the allegations in the plaintiffs' complaint or to the arguments that they have made to date. The complaint does mention the Privacy Act, but it does so only in its first two paragraphs, and, even there, it asserts that the Act (along with FOIA) provides a basis for the plaintiffs to challenge the Department's "withholding from public disclosure certain records." Am. Compl. ¶¶ 1–2. Nowhere does the complaint allege that the Department failed to amend inaccurate agency records. *See* 5 U.S.C. § 552a(g)(1)(A). Nor does it seek to compel the Department to correct any error in its records or claim entitlement to damages due to the Department's failure to maintain accurate records. *See*

*id.* § 552a(g)(1)(C). Rather, the only claim alleged—and the only relief sought—relates to the plaintiffs' demand that Department "immediately release the requested records to the plaintiffs." Amend. Compl. 3. Likewise, in their prior briefing, Plaintiffs did not raise this issue—or even hint at it. In light of their failure to raise any claim for correction of agency records or damages under the Privacy Act until now, the Court declines to reconsider its opinion on this basis.

In the exercise of its discretion, however, the Court will defer entering final judgment in this case for 14 days in order to permit the plaintiffs an opportunity to move for leave to amend their complaint to add a claim for amendment under the Privacy Act. In doing so, however, the Court expresses no view on whether the plaintiffs can satisfy the standard for filing an amended complaint, including whether such a proposed amendment comes too late in the day or whether it would be futile. *See Foman v. Davis*, 371 U.S. 178, 172 (1962); *cf. Laber v. Harvey*, 438 F.3d 404, 427–28 (4th Cir. 2006) (observing that "the further [a] case [has] progressed . . . , the more likely it is that [an] amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part"). But because neither party has briefed these issues, the Court will permit the plaintiffs one last opportunity to show why this case should not be brought to a close.

## CONCLUSION

For these reasons, the Court will grant the Department's motion for summary judgment, Dkt. 24, deny the plaintiffs' motion for reconsideration, Dkt. 28, and deny the plaintiffs' motion for summary judgment, Dkt. 30. The Court will delay the entry of judgment in this case for two weeks, until July 1, 2016. If the plaintiffs wish to amend their complaint to seek further relief

under the Privacy Act, they may move for leave to do so on or before July 1. A separate Order will issue.

<u>/s/ Randolph D. Moss</u>  
RANDOLPH D. MOSS  
United States District Judge

Date: June 17, 2016